IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROL PETRICE TRAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-3399 |
| | § | |
| NANCY BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[2] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 18), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 12), and Defendant's Motion for Summary Judgment (Document No.21), and Plaintiff's Responses (Document Nos. 24, 28, & 29). After considering the cross motions for

---

[1] "On March 6, 2018, the Government Accountability determined that Nancy Berryhill's continued service as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act of 1998. GOVERNMENT ACCOUNTABILITY OFFICE, *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998-Commissioner,* Social Security Administration (2018), http://www.gao.gov.assets/700/690502.pdf. Accordingly, this position is now vacant." *Romero v. Berryhill*, No. EP-18-CV-000083, 2018 WL 4924560 *5 n.1 (W.D. Tex. El Paso Division Oct. 10, 2018).

[2] The parties consented to proceed before the undersigned Magistrate Judge on October 25, 2018. (Document No.17).

summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 21) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 18) is DENIED, and the decision of the Commissioner is AFFIRMED.

## I. Introduction

Plaintiff, Carol Petrice Travis ("Travis") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability benefits ("DIB"). Travis argues that the Administrative Law Judge ("ALJ") committed errors of law when he found that Travis was not disabled. Travis argues that the ALJ, Thomas G. Norman, erred in finding that she did not meet or equal listing 11.04B. Travis seeks an order reversing the ALJ's decision, and awarding benefits, or in the alternative, remanding her claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Travis was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II. Administrative Proceedings

On June 28, 2012, Travis filed for DIB claiming she has been disabled due to high blood pressure and a stroke. (Tr. 144-147). The Social Security Administration denied her application at the initial and reconsideration stages. (Tr. 58-67, 68-79). Travis then requested a hearing before an ALJ. (Tr. 93-94). The Social Security Administration granted her request, and the ALJ held a hearing on June 24, 2014. (Tr.35-57). On August 8, 2014, the ALJ issued his decision finding Travis not disabled. (Tr. 18-34).

Travis sought review by the Appeals Council of the ALJ's adverse decision. (Tr.14-17). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Travis's contentions in light of the applicable regulations and evidence, the Appeals Council, on September 15, 2015, concluded that there was no basis upon which to grant Travis's request for review. (Tr.1-6). The ALJ's findings and decision thus became final.

Travis has timely filed her appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 21). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 18). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 539. (Document No. 13). There is no dispute as to the facts contained therein.

## III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the

decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v.*

*Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.[3]

In the instant action, the ALJ determined, in his August 8, 2014, decision that Travis was not disabled at step five. In particular, the ALJ determined that Travis meets the insured status requirements of the Act through December 31, 2017, and that Travis has not engaged in substantial gainful activity since May 25, 2012, the alleged onset date (step one); that Travis's hypertension and history of right basal ganglia hemorrhage with left sided paresthesia were severe impairments and that Travis's diabetes was not (step two); that Travis does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1 of the regulations (step three); that Travis has the RFC to perform sedentary work with the following limitations:

> The claimant can lift a maximum of 10 pounds. She can never climb ladders, ropes and scaffolds, and she can only occasionally balance, stoop, kneel, crouch, crawl, and

---

[3] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017). Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017. The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Because Travis filed her application for DIB prior to January 17, 2017, the Court will cite to the old rules that are applicable to claims filed prior to 2017.

climb ramps and stairs. She is limited to frequent handling and fingering with the left hand. (Tr. 24).

The ALJ further found that Travis could perform her past relevant work as a receptionist and as a financial coordinator (step four); and that based on Travis's RFC, age (41), education (high school), work experience, and the testimony of a vocational expert, that Travis could perform work as a taxicab starter, an appointment setter, and as a PBX operator, and that Travis was not disabled within the meaning of the Act (step five). As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

The objective medical evidence shows that Travis has a history of adult onset diabetes that is well controlled. (Tr. 214-216). Travis also has a history of hypertension and Bell's palsy. The medical records reveal that at an office visit on June 29, 2011, with her primary care physician, Cheryl K. Johnson, M.D. ("Dr. Johnson"), Travis's blood pressure was 232/124. She was advised to go to the emergency room for an evaluation but declined. (Tr. 214-216). At a follow-up appointment on July 13, 2011, Travis reported that she had been taking her blood pressure medicine. Travis had a blood pressure reading of 125/80. (Tr. 217-219). That said, less than a year later, Travis had stopped taking her prescribed blood pressure medication, and on May 25, 2012, Travis

was seen at the West Houston Medical Center Emergency Room for a stroke. A CT scan revealed that Travis had a "hemorrhagic focus centered in the right basal ganglia and extending to the right frontal lobe measuring 2.0 x 2.4 x 3.6 cm with mild mass effect of the adjacent sylvian fissure and right lateral ventricle without midline shift...." (Tr. 254, 267). Treatment records from the emergency room show that Travis had decreased sensation of the left side of face, decreased sensation to the left upper extremity and left lower extremity. She was unable to lift her left arm off the bed. Travis's grip strength was 2/5 on the left, and 5/5 on the right. Her left ankle was in a plantar flexed position, with minimal dorsi flexion. She also had diminished reflexes on the left. (Tr. 296). Travis was transferred the following day to Ben Taub Hospital. She remained hospitalized from May 26, 2012, to June 11, 2012. (Tr. 271-354). With respect to Travis's hospital stay, the discharge summary states in pertinent part:

> The patient is a 41 y.o. female R-handed female with poorly controlled hypertension who presented 5/26/12 as a transfer from an OSH with a hypertensive right basal ganglia hemorrhage. She was initially plegic, but slowly improving. During hospitalization, patient admitted to MICU for monitoring and cardene drip, since she had taken ASA prior to admission patient received platelet transfusion. Repeat CT head no worsening hemorrhage. Patient was able to be weaned off IV medications but with 4-5 antihypertensives at high doses. She developed AKI possibly due to strict BP control and the use of ACE inhibitors. Antihypertensives adjusted and BP relaxed when thought to be safe. Renal US with echogenicity changes thought to be due to "medical renal disease". Patient in stable condition to be transferred to rehab facility. (Tr. 272).

When discharged from Ben Taub Hospital, Travis was alert, oriented to person, place and time and followed commands. Her speech was fluent. With respect to Travis's motor skills, she had left sided weakness rated as 4/5 in the upper and lower extremities. She had decreased sensation to light touch and pinprick on the left. (Tr. 272). Travis was discharged in stable condition to the Quentin Mease Community Hospital for inpatient rehabilitation. Travis had inpatient rehabilitation from

8

June 7, 2012 to June 21, 2012. (Tr. 355-379.

Following her discharge from inpatient rehabilitation, Travis had follow-up appointment with Dr. Johnson on July 2, 2102. (Tr. 220-223). Dr. Johnson noted that Travis's "muscle tone is normal in extremities. . . Decreased strength in left lower leg. Gait is abnormal." (Tr. 222). Her blood pressure was 130/82. Based on Travis's having "some" decreased muscle strength on the left thigh with lack of coordination, Dr. Johnson referred Travis for physical therapy. In addition, Dr. Johnson completed a form for a handicap placard. Dr. Johnson checked the box indicating that the placard should be permanent, not temporary. (Tr. 231).

Travis went for an outpatient physical therapy evaluation on July 12, 2012. (Tr. 386404, 437-448). Travis complained of soreness and tightness in the left thigh. On a scale of one to ten, Travis rated the pain as a five and stated that it did not interfere with her sleep. Overall, Travis had generalized weakness in the lower left extremity, which affected balance and gait. However, because of financial constraints, Travis did not continue with further physical therapy sessions.

Travis was referred for a neurology consultation with Venkat Sankar, M.D. The evaluation took place on September 17, 2012. (Tr. 407-409). Travis complained of left sided weakness and numbness. She ambulated with a cane. Examination results show Travis was alert, oriented and her memory was intact. She had a mild pedal edema in the left foot. Because she was walking with a cane she was unable to do tandem walking. She had altered sensory pinprick on the left side. Travis's strength in the left upper extremity measured 5/5 and measured 4/5 in the left lower extremity. Based on the examination results, Dr. Sankar opined that Travis had mild left sided weakness and recommended that she do strengthening exercises every day. (Tr. 409). Travis had a CT scan of the brain on September 25, 2012. The results of the scan were unremarkable. (Tr. 238,

9

406, 414).

Travis had a follow-up appointment with Dr. Johnson on October 4, 2012. (Tr. 410, 412, 413). Dr. Johnson's treatment note reveals that Travis's blood pressure was 142/85. Her posture was normal. Her muscle strength in the left upper and lower extremities was 4/5. She had decreased sensation to light touch on the left side. She had a normal range of motion in her joints. Travis had an abnormal gait, with a left foot drop.

Dr. Johnson referred Travis to William H. Fleming, III, M.D., a neurologist. According to Dr. Fleming's October 23, 2012, treatment note, Travis was mentally alert, her gait was hemiparetic (left) and she used a cane. She had no speech impairment, and had no cognitive impairment. Dr. Fleming noted that Travis has peripheral 7th nerve palsy (Bell's). She had pain globally on the left side. Travis's muscle strength measured 5/5 in all muscles. In addition, she had normal strength in her upper and lower extremities. She had no limitations in tandem walking, walking on her toes and heels, and performing rapid alternating movements. Based on the results of the physical examination, Dr. Fleming diagnosed Travis with cerebrovascular disease late effects; hypertension and Bell's palsy. Dr. Fleming ordered several diagnostic tests. The results of an EEG, Transcranial doppler study, and carotid doppler study were all normal. (Tr. 492-494, 514, 515, 518, 526-528).

Travis returned to Dr. Johnson for an office visit on November 6, 2012. (Tr. 501-502). Travis's blood pressure was 134/80. The treatment note indicates that Travis's had decreased motor strength in the left upper extremity along with decreased muscle strength in the left lower extremity. She had a decreased range of motion on the left side. Travis's gait was abnormal. Dr. Johnson completed a form for Travis's long term disability insurance, indicating the Travis could not perform work of any kind based on decreased muscle strength in the left upper and lower extremities and lack

10

of coordination. (Tr. 483).

Travis returned for a follow-up appointment with Dr. Fleming on February 11, 2013. (Tr.

511-513, 532-534). Dr. Fleming forwarded his findings to Dr. Johnson. The results of Travis's

examination revealed that she was using a cane; she had no speech or cognitive abnormalities; her

light touch was globally intact, her strength was normal. Travis had an MRI of the brain with and

without contrast and MRA of the brain on March 20, 2013. (Tr. 516-517, 524-525). The radiologist

opined that the results were within normal limits. The radiologist wrote, in pertinent part:

> 1. An approximately 1 cm focal area of hemosiderin staining involving the deep
> white matter just deep to the right posterior subinsular cortex consistent with the
> patient's provided history of anterior cerebral hemmorrhage. I do not see any definite
> MR criteria on the brain MRI or brain MRA to suggest any vascular malformation
> or any underlying cavernous malformation or venous angioma.
>
> 2. Otherwise, MRI of the brain with and without contrast and brain MRA within
> normal limits, as discussed above in detail.

Travis was next seen by Dr. Fleming on May 15, 2013. (Tr. 529-531). Dr. Fleming noted that "Ms.

Travis is doing quite well." The examination revealed that Travis's speech and cognitive skills were

normal, as were her muscle strength and tone. Based on his examination, Dr. Fleming opined that

neurologically, Travis was stable. (Tr. 531).

Here, substantial evidence supports the ALJ's step two finding that Travis's hypertension,

and history of right basal ganglia hemmorrhage with left sided paresthesia were severe impairments

and that diabetes was a non-severe impairment.

At step 3, the ALJ must determine whether the claimant's impairment(s) matches, or is

equivalent to, one of the listed impairments. The listings describe impairments that prevent the

claimant from performing any substantial gainful activity, without consideration of a cliamant's age,

11

education and work experience. 20 C.F.R. § 404.1520(d). The ALJ has the burden to identify the relevant listed impairment. Plaintiff has the burden of establishing that her impairment meets or equals an impairment set out in the Listing of Impairments. *See Sullivan v. Zebley* 493 U.S. 521, 530-31 (1990). Here, the ALJ correctly identified 11.04 as the listing matching the effects of Travis's May 25, 2012 stroke. Travis, relying on Listing 11.04B that went into effect on September 28, 2016, argues that the ALJ erred in finding that she did not meet or equal Listing 11.04B, based on her in coordination on the left side of the body, slurred speech and history of Bells' palsy. The Commissioner counters that the ALJ properly determined that Travis did not meet or equal Listing 11.04.

Because the ALJ issued his decision on August 8, 2014, the court applies the listing in effect at the time of the ALJ's decision, and Appeals Council review, and which was in effect through September 28, 2016, and not the listing cited to by Travis. To meet Listing 11.04 for central nervous system vascular accident, Travis must show that for more than 3 months after her stroke, that she had either: (A) sensory or motor aphasia (loss of ability to understand or express speech) resulting in ineffective speech or communication, or (B) significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station as described in Listing 11.00(C). 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 11.04(A)-(B) (2014). Listing 11.00(C) requires findings of "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor, or other involuntary movements, ataxia, and sensory disturbances... which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases on neurological impairment. The assessment of impact depends on the degree of interference with locomotion and/or interferences with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(C)(2014). Travis argues that the residual side effects of May 25, 2012 stroke include severe pain/soreness on the left side of the body, left sided weakness, numbness and loss of sensation as well as dizziness, light heatedness, vertigo, poor balance, chest pains, and problems with memory and concentration. Travis further argues she meets or equals the listing because she drops objects, and has difficulty standing or sitting for extended periods. (Document No. 24, p. 1 and Document No. 28, p. 1). Travis argues that "comments made during follow-up appointments do not reflect my overall health." (Document No. 28, p. 3 & Document No. 29, p. 1-2).

Upon this record, the ALJ correctly found that the residual effects of Travis's stroke did not meet or equal Listing 11.04. There is no medical evidence in the record suggesting that Travis's suffered from ineffective speech or communication. Likewise, the medical evidence fails to show *significant* and *persistent* disorganization of motor function in two extremities that resulted in *sustained* disturbance of gross and dexterous movements, or gait and station for more than three months after her stroke. While the medical evidence shows that Travis has *mild* left sided weakness, a hemiparetic gait, and used a cane, the totality of medical evidence shows improvement in her condition such that by the last treatment note in May 2013, Dr. Fleming, a neurologist, opined that she was neurologically stable, had normal reflexes, a normal range of motion, muscle strength and tone on the left side. Moreover, the medical records show that Travis is right hand dominant. In addition, two disability determination unit physicians reviewed the record and concluded that Travis did not meet Listing 11.04. To the extent that Travis argues that comments she made during follow-up appointments do not reflect her overall health, in order to minimize these records, the Court may not reweigh the evidence. Based on the objective medical evidence, as thoroughly discussed by the

ALJ in his decision, substantial evidence supports the ALJ's step three determination that pre-months post stroke that Travis did not have a *significant* and *persistent* disorganization of motor functioning resulting in *sustained* disturbance of gross and dexterous movements, or gait and station.

**B. Diagnosis and Expert Opinion**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The Social Security regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source. 20 C.F.R. § 404.1527(c). The regulations provide in pertinent part that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ has the ultimate responsibility to determine disability status. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). When good cause is shown, less weight, little weight, or even no weight may be given to a treating physician's opinion. *Id.* The Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) held that when a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported and consistent with other substantial evidence, an ALJ must afford it controlling weight. The Fifth Circuit further instructed that an ALJ has good cause to discounting an opinion on a treating physician where "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. In such a situation, the ALJ must assess what weight the opinion should be given based on factors enumerated in 20 C.F.R. § 404.1527(c). Those factors include: (1) the physicians's length of treatment of the claimant;

(2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations. *Id.* These factors need not be considered when there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when "the ALJ weighs treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458. Simply put: "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F.App's 461, 467 (5th Cir. 2009). An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton,* 209 F.3d at 455. "The ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *Kneeland v. Berryhill,* 850 F.3d 749, 761 (5th Cir. 2017)(ALJ committed error in failing to address examining physician's conflicting opinion thereby making it impossible to know whether the ALJ properly considered and weighed the opinion); *but see Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005)(failure by ALJ to mention a piece of evidence does not necessarily mean that the ALJ failed to consider it). Thus the absence of an express statement in the ALJ's written decision does not necessarily amount to reversible error because procedural perfection is administrative proceeds is not required. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012)("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").

RFC is what an individual can still do despite her limitations. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the ALJ. *see Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Upon this record, the ALJ properly incorporated all the appropriate functional limitations in his RFC to account for Travis's residual effects from her stroke. The ALJ thoroughly discussed the objective medical evidence; Travis's testimony and Function Reports; and the opinion evidence. The ALJ's RFC determination is consistent with the record as a whole. The ALJ, based on the totality of the evidence, concluded that Travis could perform a sedentary work limited to the extent that she could never climb ladders, ropes and scaffolds, and can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She is also limited to frequent handling and fingering with the left hand, and gave specific reasons in support of this determination. This factor weighs in favor of the ALJ's decision.

Here, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects those findings accurately. The ALJ gave Dr. Johnson's little weight because her opinion concerning Travis's physical limitations and inability to work were inconsistent with her own treating records. In addition, statements made on a form for a handicap placard about disability are not binding on the Commissioner. Given the proper discounting of the opinion of Dr. Johnson, upon this record, the Court concludes that the diagnosis and expert opinion factor also supports the ALJ's decision.

16

## C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALL, who has had the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Here, Travis testified about her health and its impact on her daily activities. She offered no testimony or corroboration from her family or friends with respect to her complaints about her condition. Travis testified that she drops objects and has some decreased sensation in the left hand. She also has a burning sensation and tightness in her leg. (Tr. 45). Travis testified that she elevates her left leg to keep the swelling down. (Tr. 46). Travis estimated that she could walk thirty minutes

17

and could sit thirty minutes, but would need her left leg propped up. (Tr. 46). Travis testified that she naps two hours a day, twice a day. (Tr. 47). Travis testified that she cannot bend, stoop or squat and has difficulty with stairs. (Tr. 47-48). She estimated she could lift and/or carry ten pounds. (Tr. 49). Travis testified that her daily activities include watching television, reading, working puzzles, sitting on her patio, and when able, going on a walk. (Tr. 49). Travis denied doing house work. (Tr. 50).

Travis also completed a Function Report on October 1, 2012. (Tr. 242). Travis described a typical day as waking, taking her medication, eating, sitting at the computer, reading the bible, watching television, sitting outside and occasional cleaning. (Tr. 179). Travis wrote that she prepares simple meals and does house work such as folding clothes, washing dishes, sweeping, cleaning the bathroom sink and vacuuming. (Tr. 180). Travis's hobbies and interests include watching television, talking to family, going to church and the grocery store. (Tr. 181). Travis completed a second Function Report on April 10, 2013. She identified her daily actives as reading, watching television, cleaning her bed, making her medicine, and playing with her grand baby. (Tr. 196, 199). Travis also indicated that she goes outside to get sun or to walk to the mailbox. (Tr. 198).

The undersigned finds that there is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly. The ALJ tied his findings to Travis's reported activities of daily living as set forth in the function reports, in the medical records and testified to at the hearing. Accordingly, this factor also supports the ALJ's decision.

**D. Education, Work History, and Age**

Here, at step four, the ALJ found that Travis could return to her past relevant work as a

receptionist and as a financial coordinator. In addition, the ALJ proceeded to step five. The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that the ALJ questioned Lori McQuade, a vocational expert ("VE"), at the hearing. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436.

The ALJ posed comprehensive hypothetical questions to the VE (Tr.53-55), and Travis's non-attorney representative questioned the VE. (Tr. 55-56). The record shows the following hypothetical questions were posed at the hearing by the ALJ:

Q. So based on her age, education and past work experience I might find, I take her

down to the sedentary level only lifting up to 10 pounds at a time with no climbing or ladders, no climbing ladders, ropes or scaffolds, occasionally ramps and stairs, balancing, stooping, kneeling, crouching and crawling. She can do frequently handling and fingering with left hand? Could she do any of her past relevant work?

A. Yes. (Tr. 53-54).

\*             \*             \*

Q. Now, if she has, if [] accept her testimony as being credible she lays down for two hours out of the ordinary work day. What would be your response?

A. That wouldn't be compatible, sir, with performance or maintenance, frankly in competitive employment.

Q. If she should miss over three days out of each month what would be your response?

A. That individual would not be able to maintain competitive employment. (Tr. 55)

In addition, Travis's non-attorney representative posed the following hypothetical question to the

VE:

Q. Okay, there, if you add to the original hypothetical a person who needed to elevate legs, let's say, a third of the day while working throughout the day, chronically every day would that person be able to maintain any of the past jobs that you stated that they could do or any other jobs mentioned here today or any other jobs in the national economy?

A. To what degree does this person—

Q. Ninety degree.

A. So to waist level?

Q. To waist level.

A. I don't find that to be practical to perform or maintain competitive work. (Tr. 55-56).

A hypothetical question is sufficient when it incorporates the impairments which the ALJ has

20

recognized to be supported by the whole record. As discussed above, the ALJ's RFC assessment is

supported by substantial evidence, and was incorporated in the hypothetical question posed to the

VE. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's

conclusion that Travis was not disabled. Based on the testimony of the vocational expert and the

medical records, substantial evidence supports the ALJ's finding that Travis could perform work

as a taxicab starter, an appointment setter, and as a PBX operator. The Court concludes that the

ALJ's reliance on the vocational testimony was proper, and that the vocational expert's testimony,

along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion

that Travis was not disabled within the meaning of the Act and therefore was not entitled to benefits.

Further, it is clear from the record that the proper legal standards were used to evaluate the evidence

presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

**V. Conclusion**

Considering the record as a whole, the Court is of the opinion that the ALJ and the

Commissioner properly used the guidelines propounded by the Social Security Administration,

which direct a finding that Travis was not disabled within the meaning of the Act, that substantial

evidence supports the ALL's decision, and that the Commissioner's decision should be affirmed.

As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 18), is DENIED,

Defendant's Motion for Summary Judgment (Document No. 21) is GRANTED, and the decision of

the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this _14th_ day of _March_ , 2019

_Frances H Stacy_

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE